1. TAXATION (§ 895*)—TRANSFER TAXES—EXAMINATION OF DEBTORS.
   Where the holder of notes, executed by a corporation in which the decedent *held* stock, produced the notes before the appraiser for the transfer tax, and the signature and indorsement of deceased was not disputed, the necessary prima facie proof of the validity of the indebtedness was established, and the burden of proving want of consideration for the notes was then upon the state comptroller.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. § 895.*]

2. TAXATION (§ 895*)—TRANSFER TAXES—EXAMINATION OF WITNESSES.
   In a proceeding for the assessment of transfer taxes, a witness, who held notes given by a corporation in which the deceased held stock, should not be subjected to an inquisition as to her financial affairs during the past 20 years.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. § 895.*]

3. TAXATION (§ 895*)—TRANSFER TAXES—VALUE OF CORPORATE STOCK.
   In estimating the value of corporate stock for the purpose of assessing transfer taxes, the book value of the stock may by accepted as the criterion, where it is inactive, and there is no established market value.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. § 895.*]

4. TAXATION (§ 895*)—TRANSFER TAXES—EXAMINATION OF WITNESS.
   In a proceeding for the assessment of transfer taxes upon corporate stock owned by the deceased, attorneys representing the estate should not be allowed to examine a witness who claimed that the corporation was indebted to her producing notes as evidences of indebtedness, and neither should the state's attorney be allowed to cross-question witness on irrelevant matters.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. § 895.*]

5. TAXATION (§ 895*)—TRANSFER TAXES—PROCEEDINGS FOR ASSESSMENT.
   A decree of the Surrogate in a transfer tax proceeding is binding only upon the question of taxation, and hence, while those interested in an estate may show that an indebtedness against part of the assets of the estate is not valid and should not be deducted, the question of the validity of the indebtedness should not then be adjudicated.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. § 895.*]

6. TAXATION (§ 895*)—TRANSFER TAXES—PROCEEDINGS.
   Where notes executed by the corporation in which deceased held stock were produced to establish the value of the stock in transfer tax proceedings, the appraiser is not entitled to retain the notes, except for the purpose of inspection and examination and to make a copy for his own records.
   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. § 895.*]

In the matter of the estate of Frank Crawford. Upon order to show cause why notes, made by the Frank Crawford Company, a corporation, and indorsed by the deceased, individually, which were payable to Elizabeth M. Shields, should not be delivered up to the owner

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and her examination before the appraiser terminated forthwith. Notes directed to be delivered and examination terminated.

See, also, 144 N. Y. Supp. 565.

Rounds, Schurman & Dwight, of New York City (Martin J. Keogh, Jr., of New Rochelle, of counsel), for Elizabeth M. Shields.

Harry C. Kayser, of New York City, for executors.

Franklin Bien, of New York City, for Mary W. Crawford.

Henry Brill, of New York City, for James W. Crawford.

FOWLER, S. This matter comes before the surrogate upon an order to show cause why certain notes made by the Frank Crawford Company, payable to Elizabeth M. Shields, and indorsed by Frank Crawford individually, which notes were impounded by the appraiser, should not be delivered up to the owner, and why the examination of Elizabeth M. Shields before the appraiser should not be terminated forthwith. Frank Crawford was a resident of New York at the time of his death. He left a will in which he appointed George C. De Lacy and Elizabeth M. Shields executor and executrix of his estate. On the 9th of June, 1913, this court, upon a petition of the executor and executrix, designated Solomon Goldenkranz, Esq., one of the appraisers appointed by the state comptroller, to appraise the decedent's estate in accordance with the provisions of the Transfer Tax Law. The executor and executrix submitted to the appraiser affidavits and schedules showing the nature and value of the property which the decedent owned at the time of his death, the debts for which his estate was liable, and the persons entitled to take the estate under the provisions of his will. Among the assets mentioned in such affidavit were 750 shares of stock of the Frank Crawford Company. It was claimed by the executors that this stock had no value. In the schedules showing the indebtedness of the estate, it was claimed that Elizabeth M. Shields was the owner and holder of five promissory notes made by the Frank Crawford Company to her, and indorsed by the decedent individually, amounting to $14,665. The notes were past due at the time they were produced before the appraiser.

[1, 2] As the appraiser had been directed by the surrogate under section 230 of the Tax Law (Consol. Laws, c. 60) to fix the fair market value of the property of the decedent which was subject to a tax, it was his duty to ascertain the value of the 750 shares of stock of the Frank Crawford Company and to determine the validity of the alleged indebtedness of the decedent to Elizabeth M. Shields. For this purpose he could issue subpœnas and examine witnesses. He could direct that Elizabeth M. Shields appear before him and submit to an examination in regard to the decedent's alleged indebtedness to her. But when it appeared that this indebtedness was evidenced by notes of the decedent, and it was not disputed that the signature of the maker or the indorsement of the decedent was genuine, the necessary prima facie proof of the validity of the indebtedness was established, and the burden of proving want of consideration was then upon the state comptroller. The appraiser, therefore, should not have

permitted the attorney for the state comptroller to ask the witness such irrelevant and incompetent questions as:

"How much capital did you put into the business in 1896?" "Where did you get the cash from at that time?" "Did you have any savings bank account at that time?" "Within the last 20 years will you state in what banks you have deposited?" "Did you discharge the bookkeeper?" "How old were you when you made the first loan to Crawford?" "Where were you born and in what county?"

This witness was examined on four different days before the appraiser, the examination having been conducted on two days by the attorney for the state comptroller and on the other two days by Mr. Henry Brill, attorney for some of the legatees, and Mr. Franklin Bien, attorney for the guardian of an infant legatee. The stenographer's typewritten manuscript of the testimony of Miss Shields covers 81 pages, and practically the entire record consists of incompetent questions and interrogations on matters irrelevant to the issues before the appraiser. What should have been an orderly procedure for the appraisal of the assets of decedent's estate degenerated into a wholly indefensible inquisition. While a proceeding to impose a tax is necessarily somewhat inquisitorial in its nature, it should nevertheless be conducted as nearly as possible in accordance with the commoner principles of justice and fair play.

[3] In the matter under consideration the state comptroller could have obtained a subpœna directing the executrix to produce before the appraiser the books of the Frank Crawford Company. The value of the 750 shares of stock could then be ascertained from the books of the company. As the stock was not bought and sold in the open market, and there was no evidence of bona fide sales of the stock within a reasonable time before or after decedent's death, this was the only way in which the value of the stock could be established (Matter of Bach, 147 N. Y. Supp. 229, opinion quoted in Chrystie on Inheritance Tax, p. 617; Matter of Valentine, 147 N. Y. Supp. 231, opinion quoted in Chrystie on Inheritance Tax, p. 619). The executrix produced the books before the appraiser upon the second hearing, and therefore there was no justification for the extended cross-examination of the witness by the attorneys for the state comptroller and the legatees.

[4, 5] In the course of the examination it was intimated by the attorney for the state comptroller that he had some information which led him to believe that the promissory notes were not genuine. If he had such information, it was his duty to produce his informant before the appraiser and submit his evidence in a legal and proper manner. He could not, because of such supposed information, harass the witness whom he had made his own, cross-examine her on irrelevant matters, and insist upon her answering irrelevant and incompetent questions. While the attorney for the state comptroller had the right to make the executrix his own witness and ask her questions concerning the ownership of the notes and the validity of the signatures of the maker and the indorser, the attorneys who represented the legatees had no right to cross-examine the witness or to interrogate her as to matters entirely foreign to the inquiry before the ap-

praiser. The object of the proceeding was to determine the amount of tax which should be assessed against the legatees and paid by them to the state of New York; therefore the state was interested in showing that the amount of the notes should not be deducted from the assets of the estate. But the attorneys for the legatees had no such interest. On the contrary, it was to their interest that the amount of the notes should be deducted from the assets of the estate, because the deduction would result in decreasing the tax to be assessed against their own clients. They contend, however, that they should not be criticised for endeavoring to increase the tax which the estate should pay to the state of New York. If they had aided the representative of the state in a legal and orderly manner this court would, perhaps, not venture to criticise their action; their conduct would be a matter that could be left entirely to their clients, for they were employed by the legatees who pay the tax and not by the state of New York. I will say, however, that their attitude is a most unusual one for attorneys to assume. Having been retained by the legatees to protect their interests in a proceeding in which the state endeavors to obtain from such legatees the highest tax which can be assessed under the law, these attorneys have admitted that they joined with the state comptroller in endeavoring to make the tax to be assessed against their clients as large as possible. Such conduct on the part of attorneys renders irresistible the conclusion that their cross-examination of the executrix was prompted by other motives than a desire to assist the state of New York, and was intended to accomplish some other purpose. The latitude allowed these attorneys by the appraiser in cross-examining the executrix, as well as the character of the examination itself, is manifest from the following extract from the stenographer's minutes:

"Q. When did you last look at them?

"Mr. Kayser: I submit that this question has been answered and answered twice.

"Mr. Bien: Well, she will answer the third time and the fourth time."

This intemperate and improper language was used by an attorney who represented one of the legatees, and who had no right to cross-examine the witness, or even to participate in the proceedings except for the purpose of preventing the state from imposing an excessive tax upon the interest of his client. The proceeding as conducted before the appraiser was irregular and indefensible. The entire examination of the executrix shows conclusively that the attorneys for the legatees were using the proceeding before the appraiser for some purpose ulterior to that for which it had been instituted, and the appraiser should not have permitted it. The legatees had the right, doubtless, to be present at the hearing before the appraiser, and to submit any evidence which would assist him in ascertaining the value of the decedent's estate, but they had not the right to cross-examine witnesses introduced by the executors on behalf of the estate. They had the right to show by independent testimony that the executors' valuation of the assets was inaccurate, or that the facts upon which the witness had based her conclusion were incorrect, but they had no

right to use the proceeding before the appraiser as a means of obtaining information which might be useful to them in some other litigation with the executrix. A decree of the surrogate in a transfer tax proceeding is binding only upon questions of taxation (Matter of Ullmann, 137 N. Y. 403, 33 N. E. 480; Amherst College v. Ritch, 151 N. Y. 282, 45 N. E. 876, 37 L. R. A. 305); therefore any finding made by the appraiser as to the validity of the indebtedness alleged to exist in favor of Elizabeth M. Shields would not prevent the legatees from bringing an action in an appropriate tribunal to determine the validity of such indebtedness.

[6] As the promissory notes referred to in the moving papers were only marked for identification, the appraiser had no right to impound them as requested by Mr. Bien. Even if they had been admitted in evidence, the appraiser would have no right to retain them except for the single purpose of inspection and examination, and to enable him to make a copy of the notes for his records. He should therefore forthwith deliver up these notes to the owner, Elizabeth M. Shields, who produced them. The only other question before the appraiser is the value of decedent's holdings of stock in the Frank Crawford Company. As the state comptroller had ample opportunity during the four days on which the witness appeared before the appraiser to obtain the information necessary to enable the appraiser to determine the value of this stock, and as it appears that any further examination of the witness would impose upon her needless hardship, expense, and inconvenience, I will direct the appraiser to provide for an immediate termination of her examination.